UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5:15-101-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 5:19-109-DCR |
| V. ) | |
| ) | |
| ISAI SALATIEL RUIZ PEDRAZA, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Petitioner. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Isai Pedraza was convicted at trial of conspiring to distribute cocaine, money laundering, conspiracy to commit promotional money laundering, and possession of a machine gun. [Record Nos. 160-176] He was later sentenced to a 262-month term of imprisonment, followed by a five-year term of supervised release. [Record Nos. 208, 216] The United States Court of Appeals for the Sixth Circuit affirmed the defendant's conviction and sentence. *United States v. Orozco*, 716 F. App'x 390 (6th Cir. 2017); [Record No. 272]. The United States Supreme Court denied Pedraza's petition for a writ of certiorari. *Pedraza v. United States*, 138 S. Ct. 1313 (2018); [Record No. 275]. The matter is now pending for consideration of Pedraza's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Record No. 284]

**I.**

Pedraza's § 2255 motion was referred to a United States magistrate judge for review and issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B).

Following briefing, United States Magistrate Judge Matthew A. Stinnett recommended that Pedraza's motion be denied. [Record No. 296]

This Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which specific objections are made. 28 U.S.C. § 636(b)(1)(C). However, "[w]here no objections are made, or the objections are vague or conclusory, the Court is not required to review under a *de novo*, or any other, standard." *United States v. Hale*, No. 15-018-DLB, 2017 WL 6606861, at *1 (E.D. Ky. Dec. 26, 2017) (citations omitted). Additionally, "[a]n objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *United States v. Bowers*, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017) (internal quotations and citations omitted).

Pedraza's objections present the same arguments that Magistrate Judge Stinnett has already considered and rejected. [Record No. 297] However, the Court has examined the record and, having made a *de novo* determination, agrees with the magistrate judge's analysis.

**II.**

To prevail, a defendant/petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). One claim satisfying an error of constitutional magnitude is for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984).

Pedraza presents five grounds in support of his § 2255 motion, all asserting various claims of ineffective assistance of counsel. [Record No. 284] The objections to the R&R address four of the five grounds in his § 2255 motion asserting that his counsel was ineffective.

[Record No. 297] Pedraza bears the burden of proving his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To succeed on an ineffective assistance of counsel claim, Pedraza must show two elements. *Strickland*, 466 U.S. at 687. First, he must demonstrate that his counsel's performance was deficient. This "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. Next, Pedraza must show that his counsel's deficient performance prejudiced him. *Id*. To meet this element, Pedraza must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Pedraza must demonstrate both elements of the *Strickland* analysis, but the Court need "not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

### A. Alleged Educational Deficiency

Pedraza first claims that trial counsel Joseph Eggert's performance was deficient because Eggert failed to investigate and acknowledge Pedraza's "low levels in math, english [sic], reading, social studies, science, [and] vocabulary." [Record No. 284-1] Pedraza goes on to state that he had no "clear comprehension of what information he was told by his counsel through an interpreter." [*Id*.] Further, he contends that if Eggert investigated Pedraza's comprehension levels, he could have requested a "specialized interpreter to administer a Spanish test and present[] the results to the Court. Where the Court would have been aware

of such poor mental capacity." [*Id.*] Pedraza does not assert that the Court's knowledge of his alleged poor mental capacity would have changed the outcome of the proceedings.

Pedraza's objections rely on the Presentence Investigation Report ("PSR") in claiming that it "displays an indication to counsel Eggert" that Pedraza has a "poor education level which results in poor language and comprehension levels of understanding to what information is being said to him." [Record No. 297] But the PSR ultimately refutes this claim for two reasons: (1) the PSR was completed and entered after Pedraza's conviction, and (2) the PSR indicates that Pedraza became a U.S. citizen through naturalization in 2012, he attended school in Kentucky but dropped out in the 11th grade "due to a language barrier since his native language is Spanish", and he has "become fairly fluent at speaking English over the years, but still lacks the ability to write sufficiently in English." [Record No. 233]

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). The PSR in the present case was completed and entered after Pedraza's conviction, so any indication of a "poor education level" would not have been apparent to Eggert until after the plea negotiations and trial. Accordingly, applying deference to Eggert's judgment, even if the PSR demonstrated a "poor education level," Eggert's decision not to request that the Court administer a comprehension test prior to the PSR was reasonable.

However, the PSR does not show Pedraza had a "poor education level." Instead, it indicates that the defendant attended school in Kentucky until the 11th grade and dropped out because of a language barrier. [Record No. 233] The alleged language barrier was not an issue in the present case because Pedraza was provided with an interpreter and the PSR

presents no indication that Pedraza has comprehension issues in his native Spanish language. Therefore, applying deference to Eggert's judgment, Eggert's decision not to request that the Court administer a comprehension test after the PSR was reasonable. Because Eggert's conduct did not undermine the proper functioning of the adversarial process, he did not provide ineffective assistance of counsel for failing to request an "educational equivalency report" or comprehension test.

Next, the record provides no additional indication that Pedraza was not able to effectively communicate with the interpreter. Even if Pedraza possesses a low level of intelligence, nothing indicates that he lacked competency. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]either low intelligence [nor] mental deficiency [. . .] can be equated with mental incompetence"). If Pedraza was confused, he needed to convey that confusion to counsel. Instead, Pedraza indicated that he not only understood the proceedings, but that he intended to plead not guilty. [*See* Record Nos. 28, 99, 155 (pleading not guilty to indictment, pleading not guilty to superseding indictment, stating he is not guilty in Statement of the Case).] Thus, Eggert's decisions were reasonable and Pedraza has not shown that Eggert's representation was deficient.

### B. Failed Plea Agreement

Pedraza also asserts "that he was not told of any information pertaining [to] a propos[ed] written plea agreement, or what a plea agreement was or consist [sic] of." [Record No. 284-1] He goes on to state "that if he knew of such written plea agreement that was offered by the Government for a lesser sentence, then he would have immediately plead guilty and would have not went to trial." [*Id*.] Pedraza later recanted those statements after Eggert responded that he discussed plea offers with Pedraza more than once. In his reply, Pedraza

states: "[d]efense counsel nor the government presented Pedraza a reasonable plea offer to consider without cooperation to plea guilty." [Record No. 295] He continues to explain that Eggert was ineffective because he failed to negotiate a "reasonable plea offer without cooperation." [*Id.*]

Pedraza's claim that Eggert was ineffective because he did not provide information regarding a plea agreement is unconvincing. The claim fails because Pedraza's reply demonstrates that Eggert informed him of the plea agreement, but it was not a "reasonable plea offer [in his estimation]." [*Id.*] Pedraza further indicates in his objections that "[h]e was told by counsel that there was a plea offer by the Government stating that he had to cooperate." [Record No. 297] Therefore, Pedraza's initial claim that Eggert was ineffective for failing to provide information regarding the plea agreement fails because it is directly contradicted by his reply and objections. Instead, Eggert properly presented the plea agreement with cooperation to Pedraza, explained that he thought it was not a good deal, and advised Pedraza not to take the plea. Pedraza's statement "that if he knew of such written plea agreement that was offered by the Government for a lesser sentence, then he would have immediately plead guilty and would have not [gone] to trial" also rings hollow because Pedraza explicitly admits that he believes the offer was not reasonable.

Pedraza then focuses on his claim that Eggert was ineffective because he failed to negotiate a "reasonable" plea agreement. In his objections, Pedraza explicitly states "in all cases, the Government will offer every defendant a written plea agreement to review and avoid going to trial, without cooperation." Pedraza is mistaken. "[A] defendant has no right to be offered a plea." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). Because Pedraza has no right to a plea agreement at all, he has no right to a plea agreement without cooperation. Accordingly,

Eggert's failure to obtain a plea agreement without cooperation was neither ineffective nor unreasonable. The decision about whether to accept a plea agreement ultimately rested entirely with Pedraza. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("[t]he decision to plead guilty – first, last, and always – rests with the defendant, not his lawyer"). Thus, Pedraza's decision not to plead guilty was entirely his own decision, and Eggert's inability to negotiate a more favorable deal does not constitute deficient performance.

### C. Manager/ Supervisory Role

Pedraza next claims that Eggert failed to "investigate, object, or raise that the district court [failed] to make specific findings" regarding the sentencing enhancement Pedraza received for his manager or supervisory role in the crimes. [Record No. 284-1] This Court increased Pedraza's offense level by three levels pursuant to § 3B1.1 of the United States Sentencing Guidelines because Pedraza "was a manager or supervisor [. . . ] and the criminal activity involved five or more participants." U.S.S.G. § 3B1.1(b). Pedraza asserts that this enhancement was improperly applied to his sentence because "the district court failed to make specific findings as to the identity of five or more participants in a criminal activity, and what specific role Pedraza displayed, and (5) participants in the scheme." [Record No. 284-1]

Pedraza had four co-defendants at trial. Defendant Alfredo Garcia Albores testified that Pedraza was his "boss in drug trafficking" and that he worked "for" Pedraza distributing drugs. [Record No. 250, pp. 224 - 229] Albores also confirmed that Pedraza was the one who collected and handled the money. [*Id*.] Defendant Ezequiel Arias Orozco explained that he had to "confirm [] shipments" with Pedraza before delivering them. [Record No. 251, pp. 245-246] Further, Special Agent Jared Sullivan described Pedraza as the one "organizing" and "facilitating" the deliveries and "directing [] Albores." [Record No. 249, p. 206] Accordingly,

the Court appropriately applied the U.S.S.G. § 3B1.1 enhancement. The United States demonstrated by its required burden of proof (i.e., a preponderance of the evidence) that Pedraza was the manager or supervisor of at least one individual within the criminal organization and that there were five or more participants engaging in the criminal activity.

In his objections, Pedraza states:

> [i]t is apparent through co-defendants Albores and Orozco testimony at trial that under Section two (2) of § 3B1.1 is clearly established by the Government pertaining Pedraza's manager or supervisor [role]. But, the Government has clearly failed to establish that Section one (1) under § 3B1.1 based on the "preponderance of the evidence" to prove the names of five or more "participants" in the criminal activity.

[Record No. 297] The objections also indicate that the unidentified male from Mexico cannot count as the fifth participant for purposes of an enhancement under § 3B1.1 because Pedraza has the right to confront that individual. But the identity of the male in Mexico is irrelevant. "[T]he evidence need not show that [the defendant] was the manager or supervisor of five other persons, but rather that he had a managerial or supervisory role in illegal conduct involving five or more persons." *United States v. Kraig*, 99 F.3d 1361, 1369 (6th Cir. 1996); *see also United States v. Gort-Didonato*, 109 F.3d 318, 322 (6th Cir. 1997). "A participant is defined as 'a person who is criminally responsible for the commission of the offense but need not have been convicted.'" *United States v. Henley*, 360 F.3d 509, 518 (6th Cir. 2004) (quoting U.S.S.G. § 3B1.1, comment. (n.1)).

In *Henley*, the Sixth Circuit determined that a § 3B1.1 enhancement was appropriate when there were four participants in addition to the defendant. *Id*. Accordingly, Pedraza counts as a participant. Thus, there were at least five participants including Pedraza to satisfy the qualifications for a § 3B1.1 enhancement. The § 3B1.1 enhancement was appropriately

applied, and any objection raised by Eggert would have been futile. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (holding that "counsel cannot be ineffective for failure to raise an issue that lacks merit"). Accordingly, Pedraza has not demonstrated that Eggert was ineffective for failing to object to the § 3B1.1 enhancement.

Pedraza goes on to claim that Eggert was ineffective because he failed to subpoena any of the alleged participants to testify at sentencing to establish that Pedraza did not have a manager or supervisory role in the activity. But while making this assertion, Pedraza fails to acknowledge that two participants testified at trial and both explained Pedraza's managerial role. Eggert's decision not to have more participants testify "might be considered sound trial strategy" and is presumably reasonable. *United States v. Reid*, No. 6:07-110-DCR, 2012 WL 13080625, *4 (E.D. Ky. Mar. 27, 2012), report and recommendation adopted by, No. 6:07-110-DCR, 2012 WL 1344910 (E.D. Ky. Apr. 18, 2012) (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Pedraza has failed to demonstrate that Eggert's representation fell below an objective standard of reasonableness regarding the § 3B1.1 enhancement.

**D. Sentencing Disparity**

Pedraza's fourth claim is that Eggert failed to present the national disparities of other defendants with similar records and found guilty of similar crimes. [Record No. 284-1] He asserts that there are "few if not any" defendants similar to him that have sentences as long as his. [*Id.*] He supports this claim solely by the supposed "Federal National Disparities." [*Id.*] And he believes that Eggert should have "obtained and presented" the "Federal National Disparities" to the Court to get Pedraza a "downward variance in the Guidelines for a lesser sentence." [*Id.*]

However, "counsel cannot be ineffective for failure to raise an issue that lacks merit." *Greer*, 264 F.3d at 676. Pursuant to the United States Sentencing Guidelines, Pedraza's sentencing range was 210 to 262 months. [Record No. 233] He was sentenced at the highest end of the Guidelines range to 262 months. [Record No. 216] And a sentence within the Guidelines range is given a presumption of reasonableness. *United States v. Wroten*, 744 F. App'x 245, 248 (6th Cir. 2018). *See also United States v. Volkman*, 797 F.3d 377, 400 (6th Cir. 2015) ("When a sentence is within-Guidelines, § 3553(a)(6) is an improper vehicle for challenging that sentence."). Accordingly, any objection by Eggert would have been futile. Further, contrary to Pedraza's assertion, the Court and the Government need not present evidence of similarly-situated defendants. Instead, it is enough that the sentence was within the Guidelines range. *Id*. The issue of national disparities lacked merit and Pedraza's claim that Eggert was ineffective for failing to make this argument at the sentencing hearing lacks merit.

### E. Failure to Raise Issues on Appeal

Pedraza's final claim is that Eggert failed to raise the arguments presented above on appeal. [Record No. 284-1] While Pedraza does not address this claim in his objections, the Court will review it. As explained previously, Pedraza's prior arguments lack merit. Even if Eggert presented these arguments on appeal, the outcome of the appeal would not have been different, so this argument has failed to meet the prejudice standard set forth in *Strickland*. *Strickland*, 466 U.S. 694-95. Additionally, counsel need not present every possible argument on appeal. *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014). Instead, counsel should focus on the arguments most likely to be successful, and his "professional judgment [. . . ] is presumed to be effective." *Id*. at 944. Here, it was reasonable for Eggert to disregard

the previous arguments on appeal. Therefore, the final claim that Eggert failed to raise arguments on appeal is unsuccessful.

### F. Evidentiary Hearing

Pedraza contends that an evidentiary hearing is necessary in the present case because there is a factual dispute. [Record No. 297] (citing *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). However, a court is not required to hold an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("[t]hus, no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'")

The alleged factual dispute involves what Eggert told Pedraza regarding the proposed plea agreement. As previously explained, some of the allegations are contradicted by the record. The remaining allegations are inherently not credible because Pedraza's assertions regarding what occurred with the plea agreement were contradictory. Because the allegations were either contradictory or inherently not credible, an evidentiary hearing is unnecessary. Accordingly, the magistrate judge correctly denied Pedraza's request for an evidentiary hearing.

### III.

As explained in the R&R, a Certificate of Appealability may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, Pedraza must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that

the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 472, 484 (2000)) (internal quotation marks omitted). Pedraza has failed to meet the standard here.

For the reasons previously explained, it is hereby

**ORDERED** as follows:

1. The United States Magistrate Judge's Report and Recommendation [Record No. 296] is **ADOPTED** in full and **INCORPORATED** by reference.

2. The defendant's objections to the Report and Recommendation [Record No. 297] are **OVERRULED**.

3. The defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 284] is **DENIED**.

4. This proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

5. A Certificate of Appealability will not issue.

Dated: August 2, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge